PEARSON, MJ.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN D. MCDONALD, | ) | CASE NO. 5:09CV1485 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE PATRICIA GAUGHAN |
| | ) | |
| v. | ) | MAGISTRATE JUDGE PEARSON |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | **REPORT AND RECOMMENDATION** |

Plaintiff John D. McDonald seeks judicial review of the Social Security Administration's final decision denying his application for Disability Insurance benefits and Supplemental Security Income ('benefits"). ECF No. 1.

For the reasons provided below, the undersigned recommends that the Social Security Administration's decision denying benefits to McDonald be affirmed.

## I . Overview

McDonald was born March 11, 1960 and was 47 years old at the time of the last hearing before Administrative Law Judge ("ALJ"). (Tr. 296, 599.); ECF No. 12 at 2. McDonald has a GED and his past relevant work includes: sales associate, receptionist, telephone operator, business order taker/processor, independent sales representative, truck driver, and construction laborer. (Tr. 612-13.)

The Agency's final determination shows McDonald's sole severe impairment to be fibromyalgia and that McDonald has no impairment or combination of impairments that meets or

(5:09CV1485)

medically equals the listings.  (Tr. 26.)

After reviewing the administrative record as a whole, including the medical records, relevant testimony and legal standards applied, the Court finds that the ALJ's decision is based upon appropriate legal standards and supported by substantial evidence.

## II.  Procedural History

McDonald's applications for Disability Insurance and Supplemental Security benefits have had an extensive history of internal-Agency review.  The Appeals Council reversed and remanded the initial ALJ decision for a new hearing and decision.  The Appeals Council also reversed the next ALJ decision (which was conducted by a different ALJ) and remanded the matter with instructions.  The resulting denial is on appeal in the instant matter.  The details of this somewhat convoluted procedural history follows.

On August 14, 2001 and November 23, 2001, McDonald filed applications for benefits alleging a disability as of March 4, 2001.  (Tr. 19.)  The Agency initially and upon reconsideration denied McDonald's claims.  (Tr. 19.)  On July 29, 2004, ALJ John P. Brundage ("ALJ No. 1") held a hearing after which he concluded McDonald was not disabled.  (Tr. 19.)  On November 10, 2004, the Appeals Council vacated ALJ No. 1's decision and remanded the matter with instructions.  (Tr. 19.)  On December 22, 2005, after holding a hearing, ALJ Edmund Round ("ALJ No. 2") issued a decision also concluding that McDonald was not disabled.  (Tr. 19.)  The Appeals Council vacated that decision and remanded the matter with instructions.  (Tr. 19.)  On January 18, 2008, ALJ No. 2 held a hearing at which McDonald, his counsel, and a Vocational Expert were present.  (Tr. 19.)  During the January 2008 hearing, McDonald amended

2

(5:09CV1485)

his onset date of disability to September 1, 2006.  (Tr. 19.)

On February 1, 2008, ALJ No. 2 issued a second decision denying benefits and ultimately concluding that McDonald "has not been under a disability, as defined in the Social Security Act, from March 1, 2001 through the date of this decision."  (Tr. 30.)  McDonald filed a request for a review of ALJ No. 2's decision which the Appeals Council denied in May 2009.  Because the Appeals Council denied McDonald's request for review, ALJ No. 2's decision dated February 1, 2008, became the final decision of the Agency.  Seeking a review of the Agency's final decision denying him benefits, McDonald timely filed a Complaint with this Court asserting the following issue:

> Whether substantial evidence supports the Administrative Law Judge's finding that Plaintiff could perform past work?  Specifically, whether the ALJ properly complied with the Treating Source Rule; whether the ALJ properly evaluated the opinion evidence; and whether the ALJ devised an accurate residual functional capacity?

ECF No. 12 at 1.

### III.  Law and Analysis

#### A.  Judicial Review of a Final Agency Decision

Judicial review of the ALJ's decision denying disability benefits is limited to determining whether there is substantial evidence to support the denial decision and whether the ALJ properly applied relevant legal standards.  *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  "Substantial evidence is more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).  Under 42 U.S.C. § 405(g), the findings of the

3

(5:09CV1485)

ALJ are conclusive if they are supported by substantial evidence.

In determining the existence of substantial evidence, the reviewing court must examine the administrative record as a whole. *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The ALJ's decision must be affirmed if it is supported by substantial evidence even if the reviewing court could have decided the matter differently, and even if substantial evidence also supported a different conclusion. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). The substantial evidence standard acknowledges a "zone of choice" within which the Agency may proceed without interference from the courts. *Mullen*, 800 F.2d at 545 (*quoting Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir.1984)). The court may look into any evidence in the record, regardless of whether it has been cited by the ALJ. *Id.* The reviewing court, however, may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard*, 889 F.2d at 681; *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

**B. Standard for Establishing Disability**

To establish disability under the Act, a claimant must show that he is unable to engage in substantial activity due to the existence of "a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months." *See* 42 U.S.C. §§ 423(d)(1)(A), 1382(c)(a)(3)(A). The claimant's impairment must prevent him from doing his previous work, as well as any other work existing in significant numbers in the national economy. *See* 42 U.S.C.

4

(5:09CV1485)

§§ 423(d)(2)(A); 1382c(a)(3)(B).

To determine whether a claimant is disabled, Agency regulations prescribe a five-step sequential evaluation. If a claimant can be found disabled or not disabled at any step of the sequential evaluation, the review ends. 20 C.F.R. § 404.1520(a). At Step One, the ALJ considers the claimant's work activity. A claimant is not disabled if engaged in substantial gainful activity, *i.e.*, working for profit. At Step Two, the ALJ considers the medical severity of the claimant's impairments. A claimant is not disabled if he does not have a severe medically determinable physical or mental impairment that also meets the duration requirement in 20 C.F.R. § 404.1509, or a combination of impairments that are severe and meets the duration requirement. At Step Three, the ALJ determines whether the claimant has an impairment that meets or equals one of the criteria of an impairment listed in Appendix 1 and meets the duration requirement. See 20 C.F.R. § Part 404, Subpart P, Appendix 1. A claimant is disabled if he has an impairment that meets the listing and the duration requirement. Before considering the fourth step, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"), *i.e.*, the claimant's ability to perform physical and mental work on a sustained basis despite limitations due to impairments. At Step Four, the ALJ considers whether the claimant's RFC permits him to perform past relevant work. The claimant bears the burden of proof at steps one through four. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). At Step Five, however, the burden shifts to the Commissioner to identify "a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

5

(5:09CV1485)

At Step Five, the final step, the ALJ considers the claimant's RFC and his age, education, and work experience to determine whether the claimant may work.[1]  If the claimant's impairment prevents him from doing his past relevant work, but other work exists in the national economy that the claimant can perform, the claimant is not disabled.  *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990); *see also Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003) (describing five-step evaluation).

The claimant bears the ultimate burden of proof on the issue of disability.  *See* 20 C.F.R. § 404.1512(a) ("In general, you have to prove to us that you are blind or disabled"); *Richardson v. Heckler*, 750 F.2d 506, 509 (6th Cir. 1984) ("A social security disability claimant bears the ultimate burden of proof on the issue of disability.").  Significantly, he bears the burden of proving disability up to Step Five of the sequential evaluation.  *See* 20 C.F.R. § 404.1512(a); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) ("the Secretary bears the burden of proof at step five, which determines whether the claimant is able to perform work available in the national economy").  The burden of proof regarding the establishment of disability onset date also lies with the claimant.  *McClanahan v. Comm'r of Soc. Security*, 474 F.3d 830, 836 (6th Cir. 2006).

Additionally, the claimant has the burden of providing detailed medical evidence allowing the ALJ to make an informed decision.  *See Landsaw v. Sec'y of Health & Human*

---

[1]  In those cases where a claimant is found able to perform the requirements of his past relevant work, he will not be found disabled.  *See Studaway v. Sec'y of Health & Human Servs.*, 815 F.2d 1074, 1076 (6th Cir.1987); *see also* 20 C.F.R. § 404.1520(a)(4)(iv) (indicating that "[i]f you can still do your past relevant work, we will find that you are not disabled.").

6

(5:09CV1485)

*Servs.*, 803 F.2d 211, 214 (6th Cir. 1986).  Lastly, the claimant must not only produce a diagnosis

of an impairment, but must also demonstrate correlative functional limitations.  20 C.F.R. §

404.1512(c).

### C.  The ALJ's Written Decision is Supported by Substantial Evidence

McDonald challenges ALJ No. 2's residual functional capacity ("RFC") determination

and argues that he is unable to perform his past relevant work.  McDonald asserts that ALJ No. 2

inappropriately rejected his treating physician's opinion in favor of a non-treating physician's

opinion and, as a result, made an incorrect RFC determination.[2]  Generally, McDonald claims

that while ALJ No. 2's determination that he can perform his past relevant work may be

supported by substantial evidence, the record also provides substantial evidence showing that he

is disabled and the Court should favor this position over that of ALJ No. 2's.

McDonald employs the wrong test.  The Sixth Circuit recently reiterated: "If the

ALJ's decision is supported by substantial evidence, then reversal would not be warranted even if

substantial evidence would support the opposite conclusion."  *Bass v. McMahon*, 499 F.3d 506,

509 (6th Cir. 2007); *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (stating that the Supreme

Court has held that evidentiary conflicts are "not uncommon" and that they are not a basis for

overturning the ALJ's decision).  "The substantial-evidence standard ... presupposes that there is

a zone of choice within which the decision makers can go either way, without interference by the

---

[2]  McDonald did not object to the ALJ No. 2's  treatment of his alleged mental
impairment and has, therefore, waived the right to object.  *See Brainard v. Sec'y of Health &
Human Servs.*, 889 F.2d 679, 681 (6th Cir.1989) (issue waived if not raised).  Accordingly, the
undersigned will only address McDonald's objections to the ALJ No. 2's treatment of his alleged
physical limitations.

(5:09CV1485)

courts." *Blakely v. Comm'r Soc. Sec., 581 F.3d 399, 406 (2009)* (internal citations omitted).  The correct test, therefore, is whether substantial evidence supports the ALJ's conclusions, not whether substantial evidence also supports McDonald's.  An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.  Despite McDonald's objections, the ALJ No. 2's decision is supported by substantial evidence.  If substantial evidence arguably also supports McDonald's conclusions, that alone, is not a basis for overturning the ALJ No. 2's decision.  For the reasons below, McDonald's objections should be overruled.

### 1.  ALJ No. 2 Assigned the Proper Weight to Each Doctor's Opinion Based on Supporting Substantial Record Evidence

There seems to be no disagreement that Dr. Bharat Oza is a treating physician.  The issue is whether ALJ No. 2 gave Dr. Oza the requisite weight pursuant to the treating source rule and whether ALJ No. 2 rejected Dr. Oza's opinions in favor of Dr. David E. Blumenthal, a nontreating rheumatologist, who consultatively examined McDonald.  The undersigned's review of the record and ALJ No. 2's analysis does not support McDonald's concerns with regard to ALJ No. 2's treatment of the opinions of Drs. Oza and Blumenthal.

### a.  Weight Assigned Medical Evidence, Generally

The Agency promises claimants that ALJs "will evaluate every medical opinion receive[d]."  20 C.F.R. § 404.1527(d).  Yet, it also recognizes that not all medical sources need be treated equally, classifying acceptable medical sources into three types: nonexamining sources, nontreating (but examining) sources, and treating sources.  *See Smith v. Comm'r of Soc. Sec., 482 F.3d 873, 875 (6th Cir. 2007)*.  A "nonexamining source" is "a physician, psychologist,

8

(5:09CV1485)

or other acceptable medical source who has not examined [the claimant] but provides a medical

or other opinion in [the claimant's] case."  *Id.*; 20 C.F.R. § 404.1502.  A "nontreating source"

(but examining source) has examined the claimant "but does not have, or did not have, an

ongoing treatment relationship with" her.  *Smith*, 482 F.3d at 875.  A treating source, accorded

the most deference by the Agency, has not only examined the claimant but also has an "ongoing

treatment relationship" with her consistent with accepted medical practice.  *Id.*  A physician

qualifies as a treating source if the claimant sees her "with a frequency consistent with accepted

medical practice for the type of treatment and/or evaluation required for [the] medical condition."

20 C.F.R. § 404.1502.  A physician seen infrequently can be a treating source "if the nature and

frequency of the treatment or evaluation is typical for [the] condition."  *Id.*

When evaluating medical opinions, the Agency will generally "give more weight to the

opinion of a source who has examined [the claimant] than to the opinion of a source who has not

examined" her.  *Smith*, 482 F.3d at 875; 20 C.F.R. § 404.1527(d)(1).  The Agency will give the

most weight "to opinions from [the claimant's] treating sources, since these sources are likely to

be medical professionals most able to provide a detailed, longitudinal picture of [the claimant's]

medical impairment(s) . . . ."  *Smith*, 428 F.3d at 875; 20 C.F.R. § 404.1527(d)(2).  Evidence

from non-examining sources is also considered opinion evidence.  20 C.F.R. § 404.1527(f).

Treating physicians or psychologists opinions are entitled to controlling weight under the

treating physician rule as long as they are (1) well supported by medically acceptable data and (2)

not inconsistent with other substantial evidence of record.  *Bogle v. Sullivan*, 998 F.2d 342,

347-48 (6th Cir. 1993); 20 C.F.R. § 404.1527(d)(1); SSR 96-2p.  When the treating physician

(5:09CV1485)

rule does not apply, the ALJ must continue to weigh the treating source's opinion under the following factors: "the length of the treatment relationship and frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source" in determining what weight to give the opinion.  *Wilson*, 378 F.3d at 544 (*discussing* 20 C.F.R. § 404.1527(d)).

The Agency is tasked to ". . . always give good reasons in our notice of determination of decision for the weight we give [the claimant's] treating source's opinion."  *Wilson*, 378 F.3d at 544 (*quoting* 20 C.F.R. § 404.1527(d)(2)).   Even if the purpose of the reason-giving requirement in 20 C.F.R. § 404.1527(d)(2) applies to the entire regulation, the Agency requires ALJ's to give reasons for only treating sources.  *Smith*, 482 F.3d at 876.

### b. ALJ No. 2 Properly Evaluated Dr. Oza's Opinion

Donald asserts that ALJ No. 2 inappropriately rejected Dr. Oza's medical opinions regarding McDonald's limitations.[3]  McDonald notes that Dr. Oza treated McDonald "on and off from at least 2005 through 2007" and that the doctor's opinions are supported by his own observations and other objective record evidence.  ECF No. 12 at 9.  To further support Dr. Oza's opinion, McDonald cites an opinion authored by a Dr. Shorkis in 2002 which McDonald

---

[3]  In his January 2007 progress notes, Dr. Oza found that McDonald had an inability to work.  (Tr. 107.)  On the June 2007 Ohio Jobs and Family Services form, Dr. Oza found that McDonald (1) could walk/stand and sit for 15 minutes in an 8-hour day and without interruption; (2) could lift 6-10 pounds frequently and/or occasionally; (3) was moderately limited in pushing/pulling, bending, reaching, and handling; (4) was not significantly limited in repetitive foot movements; and (5) has no limitations in seeing , hearing, or speaking.  (Tr. 105.)

10

(5:09CV1485)

describes as diagnosing "less restrictive but similar limitations."[4] ECF No. 12 at 9 n 3.

McDonald also cites, in support of his position, evidence of discogenic cervical spondylosis (Tr. 382-83), cervical radiculitis (Tr. 388-97), and narrowing of the tibiofemoral compartment of the right knee (Tr. 130.). ECF No. 12 at 9.

An ALJ is required to give a treating source's opinion "controlling weight" unless it is either not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" or is "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2). ALJ No. 2 declined to give Dr. Oza's opinion controlling weight, specifically stating that it was inconsistent with other evidence of record, a factual determination within his discretion under § 404.1527(d)(2).

The evidence McDonald relies upon to support Dr. Oza's opinion is not persuasive. At the threshold, it is important to note that ALJ No. 2 did not reject Dr. Oza's opinion, but rather recognized that given Dr. Blumenthal's opinion and other objective record evidence, Dr. Oza's opinion should be given some but not controlling weight.[5] See SSR 96-2p, 1996 WL 374188, at

---

[4] Robert Shorkis is a Doctor of Osteopathic ("D.O.") medicine associated with Stark County Department of Jobs and Family Services. (Tr. 23.)

[5] In addition to Dr. Blumenthal's 2007 opinion, ALJ No. 2 relies on Dr. Watkins' 2007 opinion as support for his finding regarding the weight given to Dr. Oza's opinions. ALJ No. 2 gave Dr. Watkins' opinion "considerable weight" because it was consistent with the objective medical records. (Tr. 29.) On a Manual Muscle Testing form Dr. Watkins found that McDonald tested normal or near normal in every area. On the Medical Source Statement of Ability to do Work-Related Activities (Physical) Dr. Watkins found that despite limited motion in his lumbar spine, McDonald (1) can lift 11-20 pounds occasionally and up to 10 pounds frequently; (2) can carry 11-20 pounds occasionally and up to 10 pounds continuously; (3) can stand/sit for 3 hours in an 8 hour work day without interruption; (4) does not require the use of a cane; (5) can continuously reach, handle, finger, feel, and push/pull with his left and right hand; ((6) can

(5:09CV1485)

*4 ("[A] finding that a treating source medical opinion . . . is inconsistent with the other

substantial evidence in the case record means only that the opinion is not entitled to 'controlling

weight,' not that the opinion should be rejected.").

With regard to the weight assigned to Dr. Oza's opinion, ALJ No.2 wrote the following:

On June 13, 2007 Dr. Oza stated opinion that Mr. McDonald could stand, walk, and sit for 15 minutes each in an 8-hour workday and could lift a maximum of 10 pounds (Ex. 19F, p. 3). I interpret this as an opinion that Mr. McDonald could engage no activity more strenuous than reclining for a total of only 45 minutes a day. The *objective evidence and the opinion of the rheumatologist Dr. Blumenthal* (discussed at page 7, *above*) *does not support this opinion and so it does not persuade me.*

(Tr. 29.)

This statement highlights evidence contradicting the findings of the treating physician –

Dr. Blumenthal's opinion and other "objective evidence" in the record. It is not of significance

that ALJ No. 2 does not immediately list the other "objective evidence." A complete reading of

ALJ No. 2's written decision reveals the other objective evidence that does not support Dr. Oza's

opinion. *See Reeder v. Apfel*, 214 F.3d 984, 988 (8th Cir. 2000) ("[D]eficiency in

opinion-writing is not a sufficient reason to set aside an ALJ's finding where the deficiency [has]

no practical effect on the outcome of the case."). ALJ No.2's written decision appropriately

---

frequently operate foot controls with his left and right feet; (7) can occasionally climb stairs, ramps, ladders or scaffolds; (8) can frequently balance, stoop, kneel, crouch, and crawl; (9) can occasionally tolerate exposure to unprotected heights and move mechanical parts; (10) can frequently tolerate exposure to operating a motor vehicle, humidity and wetness, dust/odors/fumes, extreme cold or heat, and vibrations; and (11) can tolerate continuous exposure to very loud noise. (Tr. 122-131.) Dr. Watkins also found that McDonald can shop, ambulate without a wheel chair or other instrument, walk a block at a reasonable pace, use public transportation, climb a few steps. prepare simple meals, take care of personal hygiene, and sort/handle/use paper files. (Tr. 132.)

(5:09CV1485)

detailed the deficiencies in Dr. Oza's opinion and explained why ALJ No. 2 refused to give it

controlling weight.

McDonald's description of the difference between Drs. Oza and Shorkis' opinions  as

"less restrictive" is a gross understatement of Dr. Shorkis' walk/stand finding.  In his June 2007

opinion, Dr. Oza found that McDonald could walk/stand for 15 minutes a day and 15 minutes

without a break.  (Tr. 105.)  Five years earlier in January 2002, Dr. Shorkis found that McDonald

could walk/stand for 6 hours a day and 2 hours without a break.  (Tr. 265.)  Dr. Shorkis' opinion

starkly contrasts Dr. Oza's.  Additionally, McDonald's reliance on Dr. Shorkis' opinion is

misplaced because that 2002 opinion was given before his alleged amended onset date of 2006

and before he engaged in an extended period of substantial gainful activity.[6]  Similarly, the

evidence cited regarding cervical spondylosis and radiculitis is dated 2000 and 2001, long before

the amended alleged onset date of  September 2006 and before McDonald engaged in substantial

gainful activity.  Finally in 2007, Dr. Richard J. Watkins, a State Agency examiner, found only

*very minimal* narrowing of the medial tibiofemoral compartment and did not find that McDonald

was disabled or unable to work, suggesting that the tibiofemoral finding lends very minimal

support to Dr. Oza's opinions.  (Tr. 130.) (emphasis added).

An ALJ can consider all of the evidence without directly addressing in his written

decision every piece of evidence considered, but his factual findings as a whole must show that

he implicitly resolved such conflicts.  *See Kornecky v. Comm'r of Soc. Sec.*, 2006 WL 305648, at

_____

[6]  The record reflects that McDonald engaged insubstantial gainful activity in 2003 -
2006. (Tr. 22, 559, 603, 609.)

13

(5:09CV1485)

*10 (6th Cir 2006).  ALJ No. 2's written decision shows that he considered "all symptoms and

the extent to which these symptoms can be accepted as consistent with the objective medical

evidence and other evidence" and "opinion evidence in accordance with 20 CFR 404.1529 and

416.927 and SSR 96-2p, 96-5p and 96-3p."  (Tr. 26-29.)  ALJ No. 2's evaluation of Dr. Oza's

opinion comports with the treating source rule.  *See* 20 C.F.R. § 416.927.

ALJ No. 2 properly considered the opinions of Dr. Oza and articulated his reasons for not

giving Dr. Oza's opinion controlling weight.  Accordingly, the fact that ALJ No. 2 did not give

Dr. Oza's opinion controlling weight does not amount to error (reversible or otherwise) or call

into question ALJ No. 2's RFC determination.  *See Masters v. Astrue*, 2008 WL 4082965, at *3

(E.D. Ky. Aug. 29, 2008) (*citing Heston*, 245 F.3d at 535) ("failure to explain weight given to

treating physician is not reversible error where ALJ's opinion is nonetheless supported by

substantial evidence and error was harmless").

### c. **ALJ No. 2 Assigned Dr. Blumenthal's Opinion the Proper Weight**

It is well established that the opinions of treating physicians are given greater weight than

those of physicians who examine claimants only once.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d

525, 530-31 (6th Cir.1997); *See also Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir.1985); *King

v. Heckler*, 742 F.2d 968, 973 (6th Cir.1984).   A specialist's opinion about medical issues

related to his or her area of specialty, however, is generally entitled to more weight than that of a

non- specialist.  20 C.F.R. § 404.1527(d)(5); *See also Wolfe v. Social Sec. Admin.*, 39 Fed. Appx.

317 at ***2 (6th Cir. 2002) (finding that, when presented with the opinions of two treating

physicians -- both general practitioners -- and the opinion of an examining physician, a specialist

14

(5:09CV1485)

under the regulations, a specialist's opinion is entitled to more weight than a non-specialist's);

*Adams v. Peabody Coal Co.,* 816 F.2d 1116, 1121 (6th Cir. 1987) (per curiam) (affirming ALJ's

determination to give more weight to conclusions of pulmonary expert over two treating

physicians).

McDonald contends that ALJ No. 2's rejection of Dr. Oza's opinions in favor of Dr.

Blumenthal's "cursory examination" does not comply with the regulations and that Dr.

Blumenthal's opinion is not supported by substantial evidence.  ECF No. 12 at 9.  Specifically,

McDonald asserts that ALJ No. 2 offered no analysis of Dr. Blumenthal's opinion or explanation

of the weight assigned, and that Dr. Blumenthal's opinions exceeded the scope of his specialty.

ECF No.12 at 10.

ALJ No. 2 noted that on December 20, 2007, one month before the last hearing, Dr.

Blumenthal made the following findings: (1) the reported positive ANA test is actually a negative

ANA test, (2) there are no symptoms specific for Lupus, (3) the musculoskeleletal examination

revealed no synovitis in any joint, (4) there is minimal osteophytes in the fingers, (5) there is full

range of motion in all joints, (6) there is diffuse myofascial tenderness, and (7) McDonald is

diagnosed with fibromyalgia.  (Tr. 25-26.)   Most importantly, Dr. Blumenthal remarked that:

> Patient was advised that the best strategy to treat fibromyalgia is to address the
> underlying risk factors, [including chronic stress, depression with past suicidal
> ideation, and traumatic life experiences].  *Much of his stress comes from  poverty,
> and since I do not see an illness that would qualify him for social security disability
> income, his best option would be to get a job from any employer who would offer
> one.*

(Tr. 25, 137, 22F/3.) (emphasis added)

ALJ No. 2 cited the above information as persuasive in determining McDonald's residual

(5:09CV1485)

functional capacity.  ALJ No. 2 also highlighted Dr. Blumenthal medical specialty and his inablty to diagnose  "an illness that would qualify Mr. McDonald for . . . benefits [and instead] he recommended that Mr. McDonald go to work."  (Tr. 28.)

Dr. Blumenthal's opinion was unequivocal –  McDonald was not disabled or could work.  ALJ No. 2's  written decision makes clear that he found Dr. Blumenthal's opinion supported and relied upon it in addition to the opinions of Dr. Watkins[7] and the Vocational Expert to make his final determination regarding McDonald's ability to perform his past relevant work.

McDonald's charge that Dr. Blumenthal "exceeded his specialty" is unexplained and unsupported by the record.  The undersigned, therefore, does not further discuss this accusation.

ALJ No. 2 was under no legal nor administrative obligation to discount the weight of a specialist such as Dr. Blumenthal simply because his opinion contradicted that of a treating physician.  The regulations, however, only guarantee a treating physician's opinion deference when it is both supported by substantial evidence and uncontradicted.  Neither occurred in the instant case.  ALJ No. 2 appropriately relied upon the opinion of  Dr. Blumenthal, a rheumatology specialist whose opinion is supported by substantial record evidence.  The portion of ALJ No. 2's RFC determination, based on Dr. Blumenthal's opinion, was not made in error.

## 2. __ALJ No. 2 Appropriately Determined McDonald's Residual Functional Capacity__

The RFC finding is an administrative assessment of what an individual can still "do despite [his] limitations."  *See* 20 C.F.R. § 416.945(a)(1); SSR 96-8p.  The ALJ applies a legal

---

[7]  Richard J. Watkins, M.D. examined McDonald at the request of the Bureau of Disability Determination in 2007.

(5:09CV1485)

standard to the medical facts concerning the claimant's functional abilities when determining an

RFC.  *See Peterson v. Chater*, 96 F.3d 1015, 1016 (7th Cir. 1996).  An ALJ's determination of a

claimant's RFC is a legal decision rather than a medical one.  *See* 20 C.F.R. § 416.927(e)(2);

SSR 96-5p, 61 Fed. Reg. 34471, 34474 (1996).  As such, the final responsibility for deciding

issues such as the RFC is reserved to the Commissioner.  20 C.F.R. § 416.946(c); 20 C.F.R. §

416.927(e)(2).

    In determining McDonald's RFC, ALJ No. 2 appropriately followed the two-step analysis

wherein he first determined if mental or physical impairments exist that could reasonably be

expected to produce McDonald's symptoms.  After considering the record evidence, ALJ No. 2

found that McDonald's impairments could reasonably be expected to produce the alleged

symptoms.  (Tr. 27.)  At this point ALJ No. 2 was required to evaluate the intensity, persistence,

and limiting effects of those symptoms to determine the extent to which they limit McDonald's

ability to work.  In completing this task, it was incumbent upon ALJ No. 2 to assess the

claimant's credibility.

### a.  The Credibility Assessment is Integral to an RFC Determination

    Generally, it is for the Secretary and his examiner, as the fact finders, to pass upon the

credibility of the witnesses and weigh and evaluate their testimony.  *See Heston*, 245 F.3d at

536.  Specifically, credibility determinations regarding a claimant's subjective complaints rest

with the ALJ.  *See Hopkins v. Comm'r of Soc. Sec.*, 96 Fed. Appx. 393, 395 (6th Cir. 2004)

(*citing Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987)).  The

ALJ's credibility findings are entitled to considerable deference and should not be discarded

17

(5:09CV1485)

lightly.  *See Villareal v. Sec'y of Health & Human Servs., 818 F.2d 461, 463 (6th Cir. 1987)*.

Although an ALJ's credibility finding is entitled to great deference, it must nonetheless be

supported by substantial evidence.  *See King v. Heckler, 742 F.2d 968, 975 (6th Cir.1984)* (an

ALJ's adverse credibility finding was not supported by substantial evidence where the claimant's

testimony was consistent with uncontradicted medical evidence).

When an individual alleges disabling symptoms, 20 C.F.R. § 416.929 requires the ALJ to

follow an outlined process for evaluating these symptoms.  The ALJ must determine whether

objective medical evidence supports the claimant's allegations regarding the disabling effects of

the impairment, *i.e.*, symptoms.  *See Villareal, 818 F.2d at 463*.  If the ALJ finds that the

objective medical evidence does not support the claimant's allegations, the ALJ may not simply

reject the claimant's statements, but must consider them in light of the entire record.  *Id.*  In

assessing the credibility of statements, the ALJ must look to the relevant evidence in the record.

*See* SSR 96-7p.  In the medical evidence, the ALJ should consider seven factors, as they may be

relevant to a particular claim.  20 C.F.R. § 416.929.  The ALJ need not detail his analysis of each

of the seven factors, but should make clear that he or she considered all relevant evidence.  *See*

*Cross v. Comm'r of Soc. Sec., 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005)*.

If the ALJ rejects a claimant's testimony as not being credible, the ALJ must clearly state

his reasons so as to make obvious to the individual and to any subsequent reviewers the weight

given to the individual's statements and the reason for that weight.  *Id.* at 733; SSR 96-7p; *Auer*

*v. Sec'y of Health & Human Servs., 830 F.2d 94, 95 (6th Cir. 1987)*.

In the instant matter, ALJ No. 2 found that McDonald's "statements concerning the

18

(5:09CV1485)

intensity, persistence and limiting effects of these symptoms are not entirely credible . . . ." (Tr. 27-28.)   ALJ No. 2 makes clear that he does not believe McDonald is pain free, only that the pain alleged is inconsistent with the record evidence.  (Tr.  28.)  As evidence of McDonald's lack of credibility ALJ No. 2 highlighted:

> (1)  the fact that there is no evidence of significant muscle spasm, muscle atrophy, significant motor weakness, or sensory changes;
>
> (2)  McDonald has not been hospitalized for any impairments;
>
> (3)  McDonald has an education equivalent to 12th grade;
>
> (4)  McDonald can perform personal care, take care of his finances, and do house hold chores at his own pace;
>
> (5)  Although he complained of significant difficulties in performing his job duties at Radio Shack, Mc Donald continued to work at the store for three consecutive years and did not leave until the store closed;
>
> (6)  McDonald complains of arm problems but there is no evidence of treatment for his complaints;
>
> (7)  Electrodiagnostic testing including EMG and NCV studies were normal with no evidence of nerve entrapment or carpal tunnel syndrome;
>
> (8)  McDonald's most recent examination with Dr. Blumenthal garnered a fibromyalgia diagnoses, a finding of no disabling illness, and a recommendation that McDonald go to work;
>
> (9)  Since he stopped working in July 2006, McDonald has not had any medical treatment that would change or substantially improve his condition, which evidence of his ability to work when he was unemployed; and
>
> (10) Three doctors opinions, given in 2001 and 2002, noting McDonald's alleged inability to work are negated by the fact that McDonald returned to work at the light level.

(Tr. 28-29.)

(5:09CV1485)

ALJ No. 2 clearly articulated the reasons for partially rejecting McDonald's credibility and demonstrated that he considered the relevant evidence in almost two pages of analysis. (Tr. 27-29.); *see Cross*, 373 F. Supp. at 733. Accordingly, ALJ No. 2's decision comports with the process outlined in the regulations. *See* 20 C.F.R. § 416.929. The undersigned, therefore, defers to the ALJ's determination of credibility, as it is supported by substantial evidence.

### b. ALJ No. 2 Properly Found that McDonald can Perform his Past Relevant Work

At Step Four, ALJ No. 2 found that McDonald can perform his past relevant work as a sales associate, receptionist, telephone operator and order processor at a call center based on the testimony of the Vocational Expert in response to several hypotheticals.[8] (Tr. 29, 612-613.)

ALJ No. 2 gave the Vocational Expert the capabilities and limitations of two hypothetical persons. The first hypothetical follows:

> . . . the first hypothetical worker is 47 years old , has the equivalent of a high school education, no relevant vocational training. . . could do a range of light work and specifically what I mean by that is that the . . . worker can sit, stand or walk for 6 hours each during an 8 hour day, lift, carry, push or pull or pull 10 pounds frequently and 20 pounds occasionally al with normal breaks . . . is precluded from using ladders, rope and scaffolds. He can occasionally use stairs and ramps and he must avoid all exposure to workplace hazards such as unprotected heights and unprotected moving machinery. . . . My first question is whether this first hypothetical worker could do any of the work that Mr. McDonald did in the relevant past?

(Tr. 613.) In response to the first hypothetical the Vocational Expert found that the hypothetical

---

[8] A Vocational Expert's testimony, if elicited in response to a question that accurately describes the claimant's limitations, is substantial evidence regarding the jobs a claimant can perform. *Colvin v. Barnhart*, 475 F.3d 727, 732 (6th Cir.2007). Thus, if the Vocational Expert's testimony supports ALJ No. 2's finding that McDonald was not disabled at Step Four.

(5:09CV1485)

person could do several of McDonald's past relevant jobs, including: sales associate work, receptionist, telephone operator, and order processor.  (Tr. 614.)

The second hypothetical, while similar to the first, assumed the claimant could only stand or walk for 3 hours in an 8 hour day and can sit for 8 hours.  In response to the second hypothetical the Vocational Expert found that the hypothetical person could also do several of McDonald's past relevant jobs, including: receptionist, business order processor and telephone operator.[9]  (Tr. 615.)

McDonald's counsel amended this second hypothetical to account for a "moderate limitation or occasional use with regard to pushing and pulling and handling of objects" with the right and dominate arm.  (Tr. 616.)  The Vocational Expert responded that such a limitation would "eliminate past relevant work" and could not identify a job that such a hypothetical person could perform.  (Tr. 616.)

McDonald highlighted the Vocational Expert's response to the hypothetical which included the upper-extremity limitation and argues that his right-arm impairments are well-documented and ALJ No. 2's rejection of "any upper-extremity limitations from his RFC determination resulted in an RFC which lacked the support of substantial evidence and did not accurately portray Plaintiff's limitations or abilities."  ECF No. 12 at 11.  In support of his position, McDonald offers: (1) his diagnosis and treatment of several diseases that contributed to his symptoms of right-arm numbness, weakness, and pain; and (2) numerous doctors' restriction of his right-arm use including Dr. Blankenhorn (Tr. 379-81.), Dr. Shirali (Tr. 240.), Dr.

---

[9]  ALJ No. 2 noted that the second hypothetical was taken from Dr. Watkins' opinion.

(5:09CV1485)

McMichael (Tr. 227.), Dr. Shorkis (Tr. 265.), and (7) Dr. Oza (Tr. 105.).  ECF No. 12 at 11.

ALJ No. 2 refused to include the amended upper-extremity limitation in his RFC

determination because the evidence, as discussed in his written decision, did not support the

upper extremity limitation and there is no evidence that McDonald has a severe impairment that

affects his hands.  (Tr. 30.)  In his written opinion, ALJ No. 2 discredited or did not rely upon any

of the opinions McDonald cites as support for his upper-extremity limitation.  Particularly, ALJ

No. 2 found that the opinions of Drs. McMichael and Shorkis to be unpersuasive because

McDonald returned to light level work after the opinions were given.  (Tr. 29.)  ALJ No. 2 did

not rely upon Drs. Shirali and Blankenhorn, who also gave opinions before McDonald returned

to light level work.  (Tr. 379-81, 240.)  Finally, ALJ No. 2 gave little weight to Dr. Oza's opinion

because it was directly contradicted by Dr. Blumenthal, a specialist, as discussed in detail

above.[10]  (Tr. 103-110.)

In addition to discrediting the medical evidence on which McDonald relies, ALJ No. 2

cited substantial evidence to support his determination that McDonald can perform past relevant

work when he articulated his reasons for not finding McDonald's allegations of disabling pain

entirely credible (Tr. 27-29) and when he cited supporting evidence from Drs. Watkins[11] (Tr. 24,

---

[10]  As explained above, ALJ No. 2 properly credited Dr. Blumenthal's opinion instead of Dr. Oza's because Dr. Blumenthal is a specialist and Dr. Oza's opinion is not supported by the record evidence.

[11]  ALJ No. 2 acknowledged that he relied upon Dr. Watkins findings in developing the second hypothetical. (Tr. 615.)  As noted in footnote 5, ALJ No. 2 gave Dr. Watkins "considerable weight" because his findings were consistent with the objective record evidence. Specifically, Dr. Watkins found that McDonald tested normal or near normal in every area and that despite limited motion in his lumbar spine McDonald could still perform many physical

(5:09CV1485)

120-132) and Blumenthal[12] (Tr. 25-26, 137.).

Although the ultimate decision of disability rests with the ALJ, it is the claimant's burden to prove disability. *Walker v. Secretary of H.H.S.*, 980 F.2d 1066, 1070 (6th Cir. 1992); 20 C.F.R. § 404.1527, §416.927. McDonald has failed to do so. 42 U.S.C. § 423(d)(1)(A). ALJ No. 2 met his obligation to determine whether McDonald can perform past relevant work. Whereas the upper-extremity limitation described by McDonald's counsel lacks support in the record, the limitations described in ALJ No. 2's first and second hypotheticals are supported by substantial evidence in the record. Having appropriately determined that the evidence as a whole did not support the upper-extremity limitation and that the upper-extremity limitation did not accurately portray McDonald's impairments, ALJ No. 2 reasonably chose not to rely upon that limitation and justifiably found that McDonald could perform his past relevant work.

## IV. <u>Recommendation and Conclusion</u>

The instant matter has undergone more frequent and, perhaps as a result, more thorough reviews than typical due to the number of Agency-directed reversals and remands. Continuing in that vein, the undersigned has also thoroughly reviewed the matter and, for the reasons provided above, finds that substantial evidence supports ALJ No. 2's conclusion that McDonald is not

---

work-related activities at some level (*i.e.* occasionally lifting 10-20 pounds and standing or sitting for 3 hours in an 8 hour work day without interruption). (Tr. 122-131.)

    [12] Dr. Blumenthal opined that McDonald did not have an impairment that would qualify him for social security benefits and that McDonald could best help himself by getting a job. (Tr. 137.) Notably, Dr. Blumenthal did not put restrictions on the type of work McDonald could or should perform, including his past relevant work. Instead Dr. Blumenthal opined that McDonald should seek a job from *"**any** employer who would offer one."* (Tr. 137.) .

(5:09CV1485)

disabled and, therefore, not entitled to benefits.  Accordingly, the undersigned recommends that

the Agency's final decision denying benefits to McDonald be affirmed in its entirety.

This matter is terminated on the docket of the undersigned.


  /s/ Benita Y. Pearson
Dated: June 30, 2010                     United States Magistrate Judge




## OBJECTIONS

Objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See* *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see also* *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

24